IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  20-cv-02788-WJM-KLM

NICHOLAS RIGATO,

      Plaintiff,

v.

STEVEN KIRKMAN,
SUSAN TURNER,
JOSHUA COMPTON,
TARA SMITH, and
GARY BENAVIDZ,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on the **Partial Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)** [#71][1] (the "Motion"), filed by Defendants Susan Turner ("Turner"), Gary Benavidz ("Benavidz"), Tara Smith ("Smith"), and Steven Kirkman ("Kirkman") (collectively, "Defendants").  Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#79] in opposition to the Motion [#71], and Defendants filed a Reply [#91].  Pursuant to

_____

[1] "[#71]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In addition, a pro se litigant must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion [#71] has been referred to the undersigned for a recommendation regarding disposition. *See* [#73]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#71] be **GRANTED**.

## I. Background[3]

At all times relevant to the events underlying this lawsuit, Defendants worked at the Arrowhead Correctional Center ("ACC") of the Colorado Department of Corrections ("CDOC"), where Plaintiff was incarcerated.  *See Second Am. Compl.* [#64].  Plaintiff alleges that he suffered from several constitutional rights violations related to the purported sexual abuse and harassment that he endured at the ACC.  *See id.*  In short, Plaintiff argues that Defendants Benavidz, Smith, and Kirkman violated his rights under the Eighth Amendment and that Defendants Turner and Benavidz violated his rights under the First, Fifth, Thirteenth, and Fourteenth Amendments.[4]  *See id.*

Plaintiff alleges that, while he worked in food service from January 28, 2020, to May 15, 2020,[5] he was subjected to "pat-outs" and "strip outs," where Defendant Joshua Compton ("Compton"), a correctional officer who is not a party to the present Motion [#71], "repeatedly and continuously touched Plaintiff's genitalia."  *Id.* at 5.  Plaintiff filed several

---

[3]  All well-pled facts from the Second Amended Complaint [#64] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant.  *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[4]  In the Motion [#71], Defendants Turner and Benavidz do not move to dismiss Plaintiff's First Amendment retaliation claims against them except to the extent Plaintiff seeks compensatory damages.  *See § III.E.*

[5]  Plaintiff alleges that he was "assigned to food service specifically because the [therapeutic community] program required it."  *Second Am. Compl.* [#64] at 17-18.

- 2 -

Prison Rape Elimination Act ("PREA") complaints.  *Id.* at 6.  Plaintiff alleges that he began filing complaints regarding sexual harassment, sexual abuse, and sexual misconduct in March, 2020.  *Id.* at 18.  Also on an unspecified date, his family made an outside report about the purported sexual abuse.  *Id.* at 6.

On March 26, 2020, Plaintiff alleges that, in response to Plaintiff purportedly requesting to leave after finishing his daily food service duties, Defendant Turner, the food service sergeant, told him he "need[ed] to stop whinning [sic] like a bitch" and "get [his] lazy faggot ass back to work."  *Id.* at 7.  Plaintiff told Defendant Turner that he "would definately [sic] be filing a grievance against her for her discriminatory slurs."  *Id.*  Plaintiff filed a grievance against Defendant Turner on March 31, 2020.  *Id.*  The day after he filed the grievance, Defendant Turner fired Plaintiff from his food service custodial position and placed him in a "less favorable" position washing pots and pans.  *Id.* at 8-9.  Plaintiff has no documented reports of negative behavior and attributes his firing to retaliation for filing a grievance.  *Id.*

On March 30, 2020, Defendant Benavidz, a lieutenant at the ACC, allegedly yelled at Plaintiff, threatened him, and confronted him in very close proximity with his hand raised and finger pointed in Plaintiff's face.  *Id.* at 10.  Plaintiff alleges that Defendant Benavidz told Plaintiff that, "if you piss off my staff again you're going to have a bad fucking day." *Id.*  When Plaintiff tried to explain to Defendant Benavidz that he had a directive allowing him to leave work early, Defendant Benavidz purportedly said, "I don't give a fuck, you do what I tell [you] to do."  *Id.*  Plaintiff told Defendant Benavidz that he would be filing a grievance, which he did on March 31, 2020.  *Id.*  Plaintiff argues that Defendant Benavidz was a "direct participant" in the act of firing him from his food service custodial position.

*Id.*  After Plaintiff was fired, he was called into the staff office where he explained the incident.  *Id.* at 11.  Plaintiff alleges that Sergeant Smith[6] spoke with Defendant Benavidz "in defense of Plaintiff," but that Defendant Benavidz "still chose to allow [Defendant] Turner to unconstitutionally retaliate against Plaintiff."  *Id.*

Plaintiff further alleges that Defendant Benavidz "refused to release Plaintiff from his job."  *Id.* at 12.  On May 4, 2020, Plaintiff "filed an emergency grievance on the sexual abuse inflicted by [Defendant] Compton" and named Defendant Benavidz as a participant. *Id.*  Plaintiff alleges that during an investigation of the grievance, Defendant Benavidz "gave incorrect information and deliberately lied to the PREA coordinator, Misty Logan ("Logan"), out of retaliation, in an effort to deny Plaintiff's requested remedy."  *Id.* at 13. Defendant Benavidz allegedly told Ms. Logan that Plaintiff had only been assigned to his position with food service for twenty days even though Plaintiff had worked there for approximately ninety-six days.  *Id.*  Plaintiff asserts that under the therapeutic community program ("TC program") at the ACC, "inmates must be assigned to food service for 60 days before they can be reassigned" and that under CDOC Administrative Regulation 850-03, inmates must serve thirty days in food service before transferring to a different service.  *Id.* at 13.  Plaintiff's request to transfer assignments was allegedly denied because of Defendant Benavidz's statement, and the grievance was dismissed accordingly.  *Id.* at 13-14.

On May 4, 2020, Plaintiff attempted to contact Defendant Smith, the therapeutic community supervisor, to discuss his PREA complaint.  *Id.* at 15.  Defendant Smith was "one of two supervisors of the TC program" at the ACC and was the only supervisor

---

[6]  Plaintiff is not clear whether Sergeant Smith is the same person as Defendant Smith, but, from context, it appears that Sergeant Smith and Defendant Smith are different people.

available when Plaintiff submitted his request to speak to a supervisor.  *Id.* at 17.  On May 5, 2020, Defendant Smith allegedly stated that "she would not speak with Plaintiff or 'do a 1-on-1' with Plaintiff and that Plaintiff 'should talk to mental health.'"  *Id.* at 16.  Plaintiff alleges that Defendant Smith was "on notice of a risk specific to Plaintiff's safety" because Defendant Smith knew about several complaints against Defendant Compton, including Plaintiff's complaint, complaints that two other inmates had made, and the complaint that Plaintiff's father had submitted from outside of prison on Plaintiff's behalf.  *Id.* at 16-17.

Plaintiff had previously requested to speak to someone working in mental health about the sexual abuse, on April 24, 2020.  *Id.* at 18.  Defendant Kirkman, a mental health counselor, "routinely ma[de] 'mental health rounds' to living units at [the ACC] on a daily basis," but did not contact Plaintiff until May 5, 2020.  *Id.* at 19.  Defendant Kirkman denied Plaintiff's request to declare a mental health emergency, purportedly responding to the request saying "not over your job you don't."  *Id.* at 20.  Plaintiff told Defendant Kirkman that "it's not over my job, it's about sexual abuse and I've been sexually abused by [C]DOC staff.  I've already called PREA and I need to declare a mental health emergency, I'm not okay."  *Id.* at 20.  Plaintiff also told Defendant Kirkman that "it's been an ongoing issue and I can't get any help.  [Defendant] Compton won't stop touching my balls.  I've been traumatized already in life when I was younger, so this is really messing with me.  I need help."  *Id.* at 21.  Defendant Kirkman purportedly responded with "well, my advice to you is this, life sucks and then you die."  *Id.*

Plaintiff filed this lawsuit on September 14, 2020.  *See Compl.* [#1].  On July 9, 2021, Plaintiff filed the Second Amended Complaint [#64], asserting a § 1983 action.  As is relevant to the present Motion [#71], Claim 2 relates to the March 26, 2020 incident

involving Defendant Turner and Plaintiff's subsequent firing.  *Second Am. Compl.* [#64] at 7-10.  Claim 2 asserts that Defendant Turner violated Plaintiff's First, Fifth, Thirteenth, and Fourteenth Amendment rights.  *Id.* at 7.  Claim 3 relates to the March 30, 2020 incident and subsequent incidents involving Defendant Benavidz.  *Id.* at 10-15.  Claim 3 asserts that Defendant Benavidz violated Plaintiff's First, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights.  *Id.* at 10.  Claim 4 relates to the May 4, 2020 incident involving Defendant Smith.  *Id.* at 15-18.  Claim 4 asserts that Defendant Smith acted with deliberate indifference toward Plaintiff's medical needs in violation of the Eighth Amendment.  *Id.* at 15.  Claim 5 relates to the May 5, 2020 incident involving Defendant Kirkman.  *Id.* at 18-22.  Claim 5 asserts that Defendant Kirkman acted with deliberate indifference "by denying Plaintiff's need and request for mental health care" in violation of the Eighth Amendment.  *Id.* at 18.  Plaintiff seeks punitive damages against Defendants. *Id.* at 25-26.  Plaintiff also seeks compensatory damages against Defendants Turner and Benavidz.  *Id.* at 25.

In the present Motion [#71], Defendants contend that: (1) Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Turner and Benavidz must be dismissed because "he has no protected liberty interest in his prison job entitling him to due process [and] he has failed to allege any facts showing that he was treated any differently from other similarly situated individuals"; (2) Plaintiff's Thirteenth Amendment claims against Defendants Turner and Benavidz must be dismissed "because the Thirteenth Amendment does not apply to prisoners"; (3) Plaintiff's Eighth Amendment claims against Defendants Benavidz, Smith, and Kirkman must be dismissed because his allegations of sexual abuse are conclusory and fail to sufficiently allege deliberate

indifference; (4) Defendants are entitled to qualified immunity; and (5) Plaintiff's request for compensatory damages must be denied because the Prison Litigation Reform Act ("PLRA") does not permit compensatory relief absent physical injury.  *Motion* [#71] at 3-4.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted.").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 17 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enforcement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

Defendants contend that they are entitled to qualified immunity regarding all of Plaintiff's claims.  *Motion* [#71] at 10-11.  Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982).  A government official is entitled to qualified immunity from liability for civil damages when his allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position.  *Harlow*, 457 U.S. at 818.  A government official is entitled to qualified immunity in "[a]ll but the most exceptional cases."  *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v. Katz*, 553 U.S. 194, 201

(2001).   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions," a court must "ask whether the right was clearly established."  *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

**A.   Claims 2 and 3: Thirteenth Amendment**

Plaintiff's Thirteenth Amendment claims against Defendants Turner and Benavidz appear to stem from their purported refusal to reassign Plaintiff to another job outside of food service at the ACC.   However, "[t]he [T]hirteenth [A]mendment's restriction on involuntary servitude does not apply to prisoners."  *Ruark v. Solano*, 928 F.2d 947, 949-50 (10th Cir. 1991).  In Plaintiff's Response [#80], Plaintiff states that he "does not wish to respond to Defendant's Motion to [Dismiss] the 13th Amendment claims at this time." *Response* [#80] at 2.  The Court finds that because Plaintiff is incarcerated at the ACC, no Thirteenth Amendment violation has sufficiently been alleged.  The Court concludes that Plaintiff's claims under the Thirteenth Amendment must fail and that Defendants Turner and Benavidz are entitled to qualified immunity.  *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claims 2 and 3 be **dismissed with prejudice** to the extent that they are asserted under the Thirteenth Amendment. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal when plaintiff has not made allegations "which upon further investigation and development, could raise substantial issues").

### B.    Claims 2 and 3: Fifth Amendment

Plaintiff asserts that Defendants Turner and Benavidz violated his rights under the Fifth Amendment.  "As a state prisoner, however, his due process challenges implicate his rights under the Fourteenth Amendment, not the Fifth Amendment."  *Whitmore v. Rogers*, No. CIV-13-113-M, 2014 WL 5448944, at *2 n.3 (W.D. Okla. Oct. 23, 2014) (citing *Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 WL 118860, at *1 (10th Cir. 1993) (holding that "[t]he Fifth Amendment due process clause only protects against due process violations caused by the federal government")).

Plaintiff appears to argue that his claims regarding Fifth Amendment rights violations should not be dismissed because "prison officials cannot punish Plaintiff for exercising his . . . rights by denying him certain job assignments or transferring him from one job to another."  *Response* [#80] at 3 (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)).[7]  Plaintiff conclusorily alleges that Defendants Turner and Benavidz violated the Fifth Amendment "through their own actions, and through Benavidz's failure to act on his responsibilities as Turner's supervisor."  *Response* [#80] at 5.  Plaintiff does not plausibly allege discrimination under the Fifth Amendment in his Second Amended Complaint [#64], because Plaintiff does not allege any federal government involvement in the job transfer denial.  Plaintiff is incarcerated in a state-operated facility, and Defendants Turner and Benavidz are state employees.  "State actors are subject to the due process clause of the Fourteenth Amendment, not the Fifth Amendment."  *Parnisi,*

---

[7]  Plaintiff appears to conflate the holdings in *Williams* regarding the First and Fifth Amendments. In *Williams*, the Tenth Circuit held that the district court erred in dismissing a discrimination claim based on the Fifth Amendment, finding that "prison officials cannot discriminate against him on the basis of his age, race, or handicap, in choosing whether to assign him to a job or in choosing what job to assign him."  *Id.*  The text from *Williams* that Plaintiff cites relates to the Tenth Circuit's holdings on First Amendment retaliation claims.

No. 92-1368, at *1.  Thus, the Court finds that Plaintiff has failed to state a due process claim under the Fifth Amendment, and that Defendants Turner and Benavidz are entitled to qualified immunity.  *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claims 2 and 3 be **dismissed with prejudice** to the extent that they are asserted under the Fifth Amendment.  *See Reynoldson*, 907 F.2d at 127.

**C.     Claims 2 and 3: Fourteenth Amendment**

It is unclear whether Plaintiff's claims against Defendants Turner and Benavidz assert violations of both Plaintiff's due process and equal protection rights under the Fourteenth Amendment.   In Claim 2, Plaintiff states that Defendant Turner "unconstitutionally discriminated against Plaintiff through sexual harassment, based on Plaintiff's sexual orientation."  *Second Am. Compl.* [#64] at 7.  Plaintiff, in his Response [#80], points to the Second Amended Complaint [#64] for an explanation of "how he was treated differently than other similarly situated inmates" to allege an equal protection violation.  *Response* [#80] at 4.  However, Plaintiff does not make clear any intention to assert due process violations in Claims 2 and 3.

Plaintiff acknowledges that Defendants' Motion [#71] "appears to state that the . . . 14th Amendment claims against them should be dismissed because [(1)] the Defendants state Plaintiff has no protected liberty interest in a prison job and [(2)] the Defendants also believe that there are no allegations that Plaintiff was treated differently from other similarly situated individuals."  *Id.* at 3.   Plaintiff does not provide a response to Defendants' assertion that Plaintiff's due process rights were not violated, beyond the general assertion that "the reasons stated in this response and the second amended

complaint are sufficient to support a valid legal claim under the 5th and 14th Amendments." *Id.* at 5.   Nevertheless, in viewing the allegations most favorably to Plaintiff, the Court construes Plaintiff's Second Amended Complaint [#64] to be asserting both due process and equal protection violations under the Fourteenth Amendment.

### 1.    Due Process Claim

The Fourteenth Amendment guarantees that "no state shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Due process "encompasses two distinct forms of protection: (1) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (2) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons." *Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145, 1185 (D.N.M. 2018).

Given that it is unclear whether Plaintiff may be attempting to assert a Fourteenth Amendment due process claim throughout Claims 2 and 3, the Court cannot discern whether Plaintiff further intends to assert either procedural or substantive due process claims, or both.  However, both procedural and substantive due process claims require that the plaintiff assert a legally protected interest; here, a liberty interest as alleged by Plaintiff.  Thus, "[i]n order to determine whether a due process violation has occurred, the Court must first address whether [the] allegations establish that [the plaintiff has] a protected liberty interest." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013). "In the prison context, the due process clause safeguards 'only a narrow range of protected liberty interests.'" *Id.* (quoting *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012)).

To the extent that Plaintiff may be asserting a due process claim regarding his job at the ACC, Plaintiff does not have a protected liberty interest in prison employment. *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (holding that "the Constitution does not create a property or liberty interest in prison employment" and that "Colorado law does not create a protected property or liberty interest to . . . employment in any particular job"). To the extent that Plaintiff may be asserting a due process claim regarding the automatic dismissal of his grievance, Plaintiff also does not have a protected liberty interest in a grievance procedure. *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (holding that "there is no independent constitutional right to state administrative grievance procedures . . . [n]or does the state's voluntary provision of an administrative grievance process create a liberty interest in that process").

Thus, the Court does not reach whether Plaintiff intended to assert either procedural or substantive due process claims, or both, because Defendants Turner and Benavidz's alleged misconduct does not give rise to a constitutional violation.  Plaintiff fails to adequately allege a protected liberty interest, and therefore fails to state a claim related to a violation of due process.  Because Plaintiff does not assert any other explanation for how his right to due process has been violated, Plaintiff has not stated a claim on which relief may be granted.  Therefore, the Court concludes that Plaintiff has failed to state a due process claim, and that Defendants Turner and Benavidz are entitled to qualified immunity.  *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claims 2 and 3 be **dismissed with prejudice** to the extent that they are asserted as due process claims under the Fourteenth Amendment.  *See Reynoldson*, 907 F.2d at 127.

2.      **Equal Protection Claim**

In addition to due process violations, Plaintiff appears to assert Equal Protection

Clause violations in Claims 2 and 3 of Plaintiff's Second Amended Complaint [#64].  The

Equal Protection Clause of the Fourteenth Amendment states: "No state shall . . . deny to

any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV, § 1.  This is "essentially a direction that all persons similarly situated be treated alike."

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  As a threshold matter,

Plaintiff must demonstrate that he was treated differently from others who were similarly

situated to him.  *Gehl Grp. v. Koby*, 63 F.3d 1528, 1538 (10th Cir. 1995); *see Templeman*

*v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (holding that prisoner asserting equal

protection violation must show he was treated differently from other prisoners who are

similar to him "in every relevant aspect").  Even "slight differences in [inmates'] histories"

render them not "similarly situated" for purposes of an equal protection analysis.

*Templeman*, 16 F.3d at 371.

Construing the Second Amended Complaint [#64] liberally, Plaintiff alleges that

Defendant Turner violated his Fourteenth Amendment right to equal protection when she

called Plaintiff a "faggot."  *Response* [#80] at 4; *see Second Am. Compl.* [#64] at 7.

Plaintiff argues that "this is an extremely offensive slur" and amounts to "discrimination

based on sexual orientation and/or class (TC participant)."  *Response* [#80] at 4.  Plaintiff

also argues that Defendant Turner violated his right to equal protection when she "fired

Plaintiff from his custodian position and placed him in a less favorable pots and pans

position."  *Second Am. Compl.* [#64] at 8.  Plaintiff alleges that these actions worsened

Plaintiff's working conditions because:

> (1) inmates in pots and pans are routinely not allowed to leave work early, unlike custodians; (2) inmates in pots and pans are subjected to minor burns from scalding hot water, unlike custodians; (3) inmates' clothes and shoes become soaking wet and stinking in pots and pans, unlike custodians; and (4) inmates get covered in filth and grime each day in pots and pans, unlike custodians.

*Id.* (minor grammatical edits made for clarity).   Plaintiff asserts that he "has no documented reports of negative behavior, prior to these incidents." *Id.*  Plaintiff argues that he has "thoroughly explain[ed] how he was treated differently than other similarly situated inmates," and points to the preceding allegations taken from his Second Amended Complaint [#64]. *Response* [#80] at 4.  With respect to Defendant Benavidz, Plaintiff appears to assert an equal protection claim against him as a supervisory official. *See Second Am. Compl.* [#64] at 11.

The Court finds that Plaintiff has not adequately alleged how he was treated differently from other inmates who were similarly situated to him in all material aspects. Plaintiff makes a vague assertion that "no other inmate had been fired without numerous documented [negative entries on his chronological log] and/or [code of penal discipline reports]." *Id.* at 9.  However, Plaintiff has not pointed to any inmate who is the same as him in all material aspects. *Cf. Clark v. Shrader*, No. 20-cv-01410-DDD-KLM, 2021 WL 229283, at *6 (D. Colo. Jan. 22, 2021) (holding that the plaintiff's class-of-one claim that "persons who [had] committed worse crimes than him [had] been released, while he [had] not been" should be dismissed because the plaintiff pled no facts showing how the "other pretrial detainees were similarly situated to him in any material respect").  Thus, Plaintiff fails to adequately allege an equal protection claim, and Defendants Turner and Benavidz are entitled to qualified immunity. *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claims 2 and 3 be **dismissed with prejudice** to the extent that they are asserted as equal protection claims under the Fourteenth Amendment.  *See Reynoldson*, 907 F.2d at 127.

**D.     Claims 3, 4, and 5: Eighth Amendment**

Plaintiff argues that Defendants Benavidz, Smith, and Kirkman violated his rights under the Eighth Amendment.   Plaintiff contends that Defendant Benavidz acted with deliberate indifference when he was made aware of sexual abuse and harassment allegations as a direct supervisor but purportedly failed to respond to Plaintiff's request for help.  *Response* [#80] at 7-8.  Plaintiff contends that Defendant Benavidz also acted with deliberate indifference when he "wantonly and maliciously lied during the investigation."   *Id.* at 8.   Plaintiff asserts that Defendant Smith acted with deliberate indifference when she ignored Plaintiff's request to discuss the sexual abuse and told Plaintiff to contact someone in mental health.  *Second Am. Compl.* [#64] at 16.  Plaintiff further asserts that Defendant Kirkman acted with deliberate indifference to Plaintiff's mental health needs when he refused to declare a mental health emergency.  *Id.* at 21. Defendants Benavidz, Smith, and Kirkman argue that the Eighth Amendment claims against them must be dismissed because Plaintiff's allegations are "wholly conclusory and fail to establish that he was subject to excessive risk of harm to his health and safety." *Motion* [#71] at 7.

The Constitution does not mandate comfortable prisons, *Rhoades v. Chapman*, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  It is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth

Amendment." *Helling*, 509 U.S. at 31.  The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Id.* at 104 (quoting *Gregg*, 423 U.S. at 173).  To sufficiently allege "deliberate indifference," a prisoner must allege that (1) he was deprived of a medical need that is objectively "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

The Court examines whether the Amended Complaint sufficiently alleges that Defendants Benavidz, Smith, and Kirkman were aware of Plaintiff's condition and whether their actions constituted a "deliberate indifference" to Plaintiff's medical need. *Farmer*, 511 U.S. at 828.  "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835; *Hood v. Prisoner Health Servs., Inc.*, No. 05-3198, 2006 WL 1230688, at *25 (10th Cir. May 9, 2006) (stating that negligent failure to provide medical care does not rise to "deliberate indifference to serious medical needs").  A prison official is not deliberately indifferent to an inmate's medical needs unless he "knows of [and] disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### 1.     Claim 3: Defendant Benavidz

Plaintiff alleges in his Response [#80] that "on multiple occasions [Defendant] Benavidz was made aware of a pattern of sexual behavior from [Defendant] Compton's sexual abuse/harassment during his shifts in the kitchen" and that Defendant Benavidz "was also aware of sexual harassment from [Defendant] Turner."   *Response* [#80] at 7. However, Plaintiff makes only conclusory allegations that Defendant Benavidz had subjective awareness of a substantial risk to Plaintiff's health and safety.   Plaintiff contends that he directly spoke with Defendant Benavidz about Defendant Turner calling him a "faggot" and a "bitch," but does not make any allegations that Defendant Benavidz was aware that a substantial risk of serious harm exists from these verbal remarks. *Second Am. Compl.* [#64] at 11.   Plaintiff also asserts that he filed an emergency grievance "on the sexual abuse inflicted by [Defendant] Compton" on May 4, 2020, in which he named Defendant Benavidz "as a participant in that grievance investigation." *Id.* at 12.  Plaintiff does not allege that Defendant Benavidz was aware of the contents of the emergency grievance, however.  In fact, Plaintiff does not explain at all the specific contents of the emergency grievance.  Plaintiff contends only that Defendant Benavidz spoke with the PREA coordinator and gave incorrect information about how many days that Plaintiff had worked in food service, without alleging any facts to show that Defendant Benavidz was aware a PREA complaint existed.  The Court finds that Plaintiff has failed to sufficiently allege that Defendant Benavidz was "deliberately indifferent" to an excessive risk to Plaintiff's health and safety.  Therefore, Plaintiff has failed to sufficiently allege a violation of a clearly established constitutional right, and Defendant Benavidz is entitled to qualified immunity.  *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claim 3 be **dismissed without prejudice** to the extent that it asserts a claim under the Eighth Amendment. *See Reynoldson*, 907 F.2d at 127 (holding prejudice should not attach to a dismissal when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### 2.      Claim 4: Defendant Smith

Plaintiff argues that because Plaintiff requested to "speak to [Defendant Smith] specifically about a PREA complaint," Defendant Smith's refusal to speak with Plaintiff constitutes a clear display of deliberate indifference. *Second Am. Compl.* [#64] at 15-16. Plaintiff argues that "if Plaintiff's pleas for help from his family, and himself personally, through the various forms they came in (kites, PREA complaints, email, and letters) didn't put [Defendant] Smith on notice of a constitutional problem, then the numerous previous complaints by other inmates should have." *Response* [#80] at 8-9. Plaintiff contends that Defendant Smith "should have been well aware that there was a risk of harm when [Defendant] Compton was putting his hands abusively on inmates." *Id.* at 9. Plaintiff further contends that Defendant Smith "would have been aware of a problem" because the complaint Plaintiff's father submitted regarding the sexual abuse was "referenced in an email to Plaintiff's mother." *Id.* at 16. Plaintiff argues that "any reasonable person could infer a substantial risk after numerous people complain of the same pattern of sexual abuse by the same person." *Id.* at 18.

Although Plaintiff is clear that he intended to speak with Defendant Smith about a PREA complaint, Plaintiff does not make any allegations that Defendant Smith received or read the PREA complaint that Plaintiff filed. Plaintiff also does not allege any facts

showing that Defendant Smith received or read the letter Plaintiff's father sent regarding the alleged sexual abuse.  Plaintiff does not specify whether the email to Plaintiff's mother acknowledges the contents of Plaintiff's father's letter.  Plaintiff further does not allege any facts that show Defendant Smith received or read the complaints other inmates filed against Defendant Compton.  Plaintiff's only allegation pertaining to Defendant Smith's subjective knowledge about a risk is that she "would have been aware" and "should have been well aware" of the sexual abuse.  However, that Defendant Smith "would have been aware" and "should have been well aware" of a risk is a speculative conclusion, not a factual allegation.  Therefore, Plaintiff does not sufficiently allege that Defendant Smith inferred that denying a request to discuss a PREA complaint generally was an excessive risk to Plaintiff's health or safety.  Thus, Plaintiff does not sufficiently allege a violation of a clearly established constitutional right, and Defendant Smith is entitled to qualified immunity. *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claim 4, which only asserts an Eighth Amendment claim, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 3.    Claim 5: Defendant Kirkman

Plaintiff alleges that Defendant Kirkman committed "a greigous [sic] violation and deviation from every standard of mental health care" when he refused to declare a mental health emergency at Plaintiff's request.  *Response* [#80] at 6.  ""[A] mere disagreement with the treatment offered by medical staff is not enough to establish an Eighth Amendment violation."  *Shriner v. Rohlings*, 286 F. App'x 564, 566 (10th Cir. 2008) (citation omitted).  Plaintiff contends that "not only did Plaintiff clearly elaborate upon his

need for mental health care, he also clearly explained why he needed it." *Id.*  However, although Plaintiff alleges that he explicitly told Defendant Kirkman he was "not okay," that "[Defendant] Compton won't stop touching [his] balls," that he had "been traumatized already in life," and that the sexual abuse [was] "really messing with [him]," Plaintiff still does not allege any facts related to the exact nature of his purported mental health emergency.  *Second Am. Compl.* [#64] at 20-21.  *Cf. Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (holding that the plaintiff did not sufficiently allege deliberate indifference when there was no evidence the officer knew the plaintiff had suicidal tendencies or saw that the plaintiff cut himself after the officer denied several of the plaintiff's requests to declare a mental health emergency).

The Court finds that because Plaintiff only alleges a desire to declare a mental health emergency without alleging facts that indicate the nature of the emergency, Plaintiff has not adequately alleged a violation of a clearly established constitutional right.  Thus, Plaintiff fails to sufficiently allege an Eighth Amendment violation and Defendant Kirkman is entitled to qualified immunity.  *See Harlow*, 457 U.S. at 818.

Accordingly, the Court **recommends** that Plaintiff's Claim 5, which only asserts an Eighth Amendment claim, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

## E.    Compensatory Damages

Plaintiff seeks to recover compensatory damages against Defendants Turner and Benavidz in relation to the remaining First Amendment violation allegations.  *Second Am. Compl.* [#64] at 25.  Defendants argue that Plaintiff's claims for compensatory damages are barred by the PLRA.  *Motion* [#71] at 11-12.  Defendants rely on subsection (e) of the

PLRA, which states: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Therefore, "[t]he plain language of § 1997e(e) applies only to actions 'for mental or emotional injury'" and "a claim for compensatory damages would clearly be barred in the absence of any showing of physical injury."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 808 n.6 (10th Cir. 1999).

Plaintiff argues that "compensatory damages are not barred entirely by the PLRA for First Amendment violations."  *Response* [#80] at 12.  Quoting *Lipton v. County of Orange, New York*, 315 F. Supp. 2d 434, 357 (S.D.N.Y. 2004), Plaintiff argues that "although 1997e(e) applies to Plaintiff's First Amendment retaliation claim, a First Amendment deprivation presents a cognizable injury standing alone and the PLRA 'does not bar a separate award of damages to compensate the Plaintiff for the First Amendment violation in and of itself.'"  *Response* [#80] at 12.  Plaintiff also reiterates that "a prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental or emotional injury he may have sustained."  *Id.* (quoting *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (internal citation omitted)).

However, as Defendants Turner and Benavidz correctly point out, binding Tenth Circuit law holds to the contrary.  *See Reply* [#91] at 8.  The Tenth Circuit has held that "the [PLRA] limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).  Without a legally sufficient physical injury, Plaintiff may not recover compensatory damages.

Accordingly, the Court **recommends** that Plaintiff's First Amendment claims be **dismissed with prejudice** in part to the extent that Plaintiff seeks compensatory damages against Defendants Turner and Benavidz under Claim 2 and Claim 3, respectively. *See Reynoldson*, 907 F.2d at 127.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#71] be **GRANTED**. Accordingly,

IT IS FURTHER **RECOMMENDED** that Claims 2 and 3, the claims asserted against Defendants Turner and Benavidz, be **DISMISSED with prejudice** to the extent that they are asserted under the Fifth, Thirteenth, and Fourteenth Amendments.

IT IS FURTHER **RECOMMENDED** that Claim 3, the claim asserted against Defendant Benavidz, be **DISMISSED without prejudice** to the extent that it is asserted under the Eighth Amendment.

IT IS FURTHER **RECOMMENDED** that Claims 4 and 5, the only claims asserted against Defendants Smith and Kirkman, be **DISMISSED without prejudice**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's First Amendment claims be **DISMISSED with prejudice in part** to the extent that Plaintiff seeks compensatory damages against Defendants Turner and Benavidz.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 13, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge